SUE ANN PURDY, formerly SUE ANN CLIMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Purdy v. Commissioner
Docket No. 378-77.
United States Tax Court
T.C. Memo 1979-521; 1979 Tax Ct. Memo LEXIS 4; 39 T.C.M. (CCH) 808; T.C.M. (RIA) 79521; December 31, 1979, Filed *4 Held, no common law marriage existed between P and H from Feb. 1967 through June 1973. Therefore, although P and H resided in a community property State, P is not taxable on one-half of H's income during the years in issue. Sue Ann Purdy, pro se. Douglas R. Fortney, for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined deficiencies in the petitioner's Federal income taxes of $9,011.65 for 1972 and $826.00 for 1973. The petitioner has conceded certain issues, and the only issue remaining for decision is whether there was a common law marriage under the laws of Texas between Charles F. Climer and the petitioner so that she is taxable on one-half of the community income during the years in issue. FINDINGS OF FACT Some of the facts have *5 been stipulated, and those facts are so found. The petitioner, Sue Ann Purdy (formerly Sue Ann Climer), maintained her legal residence in Amarillo, Tex., when she filed her petition in this case. She filed her individual Federal income tax returns for 1972 and 1973 with the Internal Revenue Service Center, Austin, Tex. The petitioner and Charles F. Climer were first married in a ceremonial marriage on June 11, 1957, in Kermit, Tex. Both had been married previously. She and Mr. Climer had one child, a daughter, Delisa Faye Climer, who was born on November 4, 1959. On May 28, 1963, she obtained a divorce from Mr. Climer in the Court of Domestic Relations of Potter County, Tex. The petitioner remarried Mr. Climer 10 days later in a ceremonial marriage at Lovington, N. Mex., on June 7, 1963. She was granted a second divorce from Mr. Climer on January 30, 1967. As part of of the property settlement in this divorce, the Court of Domestic Relations awarded her the property where she and Mr. Climer had lived. The property was a rural homestead which consisted of a house, located on 1 acre, and 2 acres next to the house. Later, in 1970 or 1971, Mr. Climer purchased, in his own *6 name, 3 acres across the back of the property. After the 1967 divorce, the petitioner continued to live at the homestead with her daughter Delisa and two of her sons by a previous marriage; and Mr. Climer lived in his own apartment. After such divorce, Mr. Climer maintained relationships and lived with several women. However, he continued to visit his daughter and the petitioner at her home, and although he never lived with the petitioner on a permanent basis during such time, he spent the night there during some of these visits. He sometimes spent the night alone with her in her bedroom, and other times, Delisa, who usually slept in the petitioner's bedroom with her, slept in the bedroom as well. The petitioner was usually unwilling to associate with Mr. Climer, and she often spent the night with a neighbor because she did not want to be with him. Many times he struck and beat her when he was in her home, and she has been hospitalized because of the injuries she sustained. She tried to obtain police protection numerous times, and he was often chased from her property by the local sheriff. However, Mr. Climer fled to his 3 acres of land behind the house, and thus, the sheriff *7 could not remove him from his own land. Mr. Climer also stored some of his business equipment on his land, thus leading to many of the visits to the petitioner's home. In January 1973, Mr. Climer married Barbara Hall in a ceremonial marriage in Clayton, N. Mex. When the petitioner learned of his marriage to Msd. Hall, she threatened to have him charged with bigamy. Ms. Hall subsequently filed for an annulment of her marriage to Mr. Climer, and such annulment was granted on March 1, 1973, on the grounds that Mr. Climer "was duly and legally married to Sue Ann Climer, and is so married at this time." However, Mr. Climer continued to live with Ms. Hall after such annulment. Even after his marriage to Ms. Hall, Mr. Climer continued to visit the petitioner and to intimidate her. To keep him away, the petitioner sought legal advice, and she was advised to file for another divorce in order to secure a temporary restraining order and to secure the 3 acres of land behind her homestead. In the divorce action, she alleged that she and Mr. Climer were married by reason of a common law marriage, and that allegation was not denied by him. The third divorce from Mr. Climer was granted *8 on June 14, 1973, and the petitioner was awarded the acreage behind her house as part of the property settlement. Mr. Climer finally stopped harassing her after this divorce. The petitioner worked for Mr. Climer's steel construction business after her second divorce from him in 1967, and she continued to do so even after he married Ms. Hall in 1973. The petitioner helped him with the payroll and did some of his typing. Mr. Climer had a checking account for his business at the First National Bank in Amarillo, Tex. (First National). The petitioner had a signature card on file with the bank for such account, and she still had her name on such card at the time of the trial in this case. She signed numerous checks from the account as "Mrs. Charles Climer" during 1972. Although many of the checks were to pay business expenses, some of the checks were for her personal expenses. On July 28, 1972, the petitioner cashed a $1,000 check from Page & Wirtz Construction Co. which was payable to Climer Steel Erectors. The check was endorsed "Climer Steel Erectors, Mrs. Chas Climer." The petitioner and Mr. Climer also maintained a joint savings account at Security Federal Savings and Loan, *9 Amerillo, Tex. (Security Federal), after the 1967 divorce. Such account had been opened in the early 1960s and was still active in 1972. However, from 1967 through the years in issue, the petitioner also had her own separate checking and savings accounts. From 1967 through 1973, the petitioner continued to use the name Climer as her surname. However, the petitioner bought a house in Amarillo sometime in 1971 or 1972 to which she took title in her name only. In February 1970, Mr. Climer also purchased a home in his name only. Although the relationship between the petitioner and Mr. Climer was uncertain during these years, they did take a trip together with the children at Christmas in 1971 or 1972 to visit his brother in El Paso. The petitioner and Mr. Climer filed joint Federal income tax returns for the calendar years 1969, 1970, and 1971. Mr. Climer filed a separate income tax return for 1972. The petitioner also filed a separate return for such year which listed her filing status as "Married filing separately." Such tax return was prepared by an income tax return preparer, and Charles F. Climer is listed as the name of her husband on such return. Mr. Climer and Barbara *10 Hall Climer filed a joint income tax return for 1973, and the petitioner filed a separate return listing her filing status as "Unmarried Head of Household" for such year. On her Federal income tax returns for 1972 and 1973, the petitioner reported no income attributable to Charles F. Climer. In his notice of deficiency, the Commissioner determined that the petitioner was responsible for one-half of the community income of her and Mr. Climer. OPINION The sole issue for decision is whether there was a common law marriage under the laws of Texas between Charles F. Climer and the petitioner so that she is taxable on one-half of Mr. Climer's income during the years in issue. Texas case law long held that the essential elements of a common law marriage in that State are: (1) An express or implied agreement to become husband and wife, (2) cohabitation as husband and wife, and (3) a holding out of each other to the public as husband and wife. ; . An agreement to marry could be implied from cohabitation of the parties and from *11 a holding out to the community that the parties were living together as husband and wife. Title I of the Texas Family Code, enacted effective January 1, 1970, codified the long-standing Texas case law on common law marriages. Section 1.91(a)(2) of such code provides that in any judicial proceeding, the marriage of a man and woman may be proved by evidence that "they agreed to be married, and after the agreement they lived together in this state as husband and wife and there represented to others that they were married." Section 1.91(b) further provides that in any proceeding in which a common law marriage is to be proved, "the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married." Moreover, the courts in Texas have also held that when rights are asserted and based upon an alleged common law marriage, the relationship of the parties will be scrutinized carefully. .
The Commissioner contends that the petitioner has admitted to being the common law wife of Mr. Climer in the divorce petition she filed in 1973 *12 and in which she alleged that a common law marriage existed between them during the period February 1967 through January 1973. He claims that further evidence of a common law marriage is shown by the joint checking account in the name of Climer Steel Erectors, by their joint savings account at Security Federal, and by the petitioner's continued use of the name Mrs. Charles Climer. We must disagree with the Commissioner, for the evidence overwhelmingly establishes that the first requisite of a valid common law marriage in Texas is not present in this case since there was no agreement between the petitioner and Mr. Climer to become husband and wife during such period. (common law marriage cannot be implied contrary to direct evidence which shows there was no agreement between the parties). The petitioner stated unequivocally that she did not want a relationship with Mr. Climer during the period in issue and that she did not consent to his becoming her common law husband during such time. Moreover, Mr. Climer testified that he, too, did not think he was involved in a common law marriage with the petitioner *13 during the years in issue. He stated that if he had intended to be married to the petitioner, he would not have married Barbara Hall in 1973. We find that their testimony on this issue is credible and that it vitiates the primary requisite for a common law marriage in Texas. In addition, the petitioner and Mr. Climer did not fulfill the second condition of a common law marriage since they did not live together as man and wife during the period in issue. (cohabitation must be declared to be as husband and wife). Mr. Climer stated that after his second divorce from the petitioner in 1967, he lived in his own apartment. He maintained relationships with other women, and he began to live with some of them during the period between 1967 and 1973. Although he visited the petitioner at her home and occasionally spent the night there, such visits do not constitute a living together as husband and wife. Furthermore, the record shows that they did not hold themselves out as husband and wife. Both the petitioner and Mr. Climer purchased houses in the early 1970s, and each took title to his house in his name only. Mr. Climer also purchased *14 the 3 acres of land behind the petitioner's homestead in his name only during such time. The petitioner testified that she filed for the 1973 divorce from Mr. Climer and alleged that he was her common law husband "not because I thought I was married to him," but rather to obtain the acreage behind her house in a property settlement. We find her testimony believable. In order to obtain a divorce, it was necessary that she allege that he was her husband even though she was not living with him. In fact, Mr. Climer had already married Ms. Hall at that time. The petitioner's attorney corroborated her testimony and admitted that he suggested that she follow such course to get possession and ownership of the land and to secure a temporary restraining order against Mr. Climer. We are not persuaded that the joint checking account at First National is any evidence of the petitioner's common law marriage to Mr. Climer. Such situation is understandable since she regularly wrote payroll checks and paid other business expenses from such account. Moreover, the petitioner maintained separate checking and savings accounts for her personal expenses during the years in issue. We also place *15 little weight on her endorsement and cashing of the $1,000 check made out to Climer Steel Erectors. The petitioner stated that she did not remember cashing the check for her own personal expenses, but even if she did so, such check may have represented nothing more than a payment for her office work at Mr. Climer's business, or a contribution to her and her daughter's support. In any event, one check cashed in 1972 hardly is sufficient to establish a common law marriage between the parties during a 6-year period.
It is also understandable that the petitioner continued to use the name Mrs. Charles Climer during the years in issue. Their daughter was a youngster at such time, and it is not unusual that a mother would want to maintain the same name as her school-age child. What is more, women who have been divorced frequently continue to use their married names. Finally, the petitioner claimed that she was not reasonable for the representation on her 1972 income tax return that Charles F. Climer was her husband. We believe her testimony, especially since the return was made out by a tax return preparer who undoubtedly was unfamiliar with her rather tumultuous personal life. *16 In conclusion, we hold that the evidence overwhelmingly establishes that there was no common law marriage between the petitioner and Charles F. Climer during the years in issue since neither party consented to such marriage, and since they did not live together as husband and wife during such years. Therefore, the petitioner is not taxable on one-half of Mr. Climer's income during 1972 and 1973. To give effect to the petitioner's concession of another issue, Decision will be entered under Rule 155.